First case for argument this morning is 171358 DWA Holdings v. United States. Mr. Garr whenever you're ready. Thank you Chief Judge Prost and may it please the court. Our position is simply that when Congress said it wanted to ease the impact on U.S. companies for transactions during 2005 or 2006, Congress meant just that. Transactions during 2005 or 2006, Congress did not mean to limit that relief to income received during 2005 or 2006. If 101D is so clear why did your client wait till it was audited to request a refund? Well Your Honor our client followed the initial informal guidance by the IRS which income received in later years. We filed our returns and as soon as we carefully studied these provisions we promptly filed a refund request. Taxpayers make mistakes all the time. There's a period within which they can file a refund request. We did and we've been strongly advocating this position since and I think if you look to the text of the statute, the overall question here is did Congress mean to grant this provisional relief to transactions during 2005 or 2006 no matter when the income was received or did Congress mean only to limit this relief to income received in 2005 or 2006 and I think the statute answers that question by referring to transactions. Under the government's view the reference to transactions is essentially superfluous and I think that's why in the government's brief it's notable that when it quotes the statute it doesn't put transactions in the quote and it basically asks this and you know the other thing that's notable about section 101 D is what's not there. There's no reference to taxable year which is an income recognition concept. You can see that from section 441 of the code itself. You can compare the statute that Congress enacted which with the Senate bill which was focused on income recognition which did take into account the difference between a fiscal year taxpayer and a calendar year taxpayer which creates problems under the government's interpretation had a special rule for fiscal taxpayers and instead Congress enacted this provision which refers to transactions. Are there any there's no there are no cases listed under the statement of related cases it seems like this would this would have affected a lot of people now there's a time of large time lag. Are you aware of this having been litigated elsewhere? No I'm not I believe this is the first case where it's been litigated and there may be I believe there's perhaps limited other litigation pending but but largely I think this is a very small category of cases or taxpayers that would be impacted by this. We're talking about obviously transactions that took place more than a decade ago. I mean the way that this provision works even under our interpretation is that this is going to peter out and even for DreamWorks it's no longer receiving income on the 2006 agreement at issue here this isn't a big tax benefit or impact in any sense this is relatively limited but it's important because it's granting US companies the transitional relief that Congress granted them in helping them ease the way through a gradual runway into this new regime in which all of this was about competition. I think that the that the strongest argument on the other side is that we have the canon that comes out of Weinberg that says that that if in fact we're interpreting a statute and there's an ambiguity that we are to interpret it in such a way as to assume that Congress would have intended to comply with any international treaty obligations. So is it your position that that canon doesn't come into play because the statutes unambiguous or is it your position that even if it comes into play it can't override the other arguments that you make? I mean both of those and let me make a few points on this because I think you're right that's that's that's basically what the government falls on. I mean first as you said I mean the canon doesn't come into play where the statute itself is clear this court said that in the Timken case on page 1344. Second the canon doesn't come in play where both interpretations would violate the international agreements that the government is relying on. Even its interpretation under its interpretation 101 D would have been contrary to what the European trading partners were talking about at that time. And you know all of that underscores that we're dealing with a statute where Congress obviously knew it was in the thick of international relations was considering how to balance things protect US companies bring us in line with international agreements and enacted these provisions and I think that would give the court all the more reasons to carefully follow what Congress said. And then finally are you saying that can't be a sort of a sliding scale in other words I think the government would say well yeah we weren't completely complying with WTO's directive but but we ought to interpret it as that the more compliance right that we can have would be the better interpretation. We looked for cases advocating that and couldn't find them and I think the reason why it doesn't make sense is that their courts then are really sort of taking on the international relations role itself and saying well how do we you know how do we want to balance international relations. It's maybe one thing where you can say that you know Congress didn't want to interfere with it at all but once you're in the realm of Congress you know directly in there in passing the law that is impacting it it knew it considered that you would follow the text but but the final point is an important one which is the international backlash here was with respect to future transactions because that's where the competition was and that's why the focus was on the binding contract rule because that had an ongoing going forward effect with respect to new transactions. Section 101 D just like section 101 C didn't deal with new transactions. It dealt with the US tax impact of old transactions 2004 2005 and 2006 and that simply wasn't the concern of our European trading partners and that's why they didn't challenge the government's interpretation of 101 C which is although it's not directly the provision at issue in this case I think is an important cornerstone understanding when the government's position has to be wrong. 101 C is a provision that says the repeals don't take effect with respect to transactions after a particular day and up until the to mean that for transactions before 2005 those transactions for income received in later years would get the full benefit of the ETI regime going forward and again that's not something that was challenged in the European trading European dispute because it dealt with prior transactions but if that's correct and it has to be I think that transactions after a certain date meant transaction entered into after that date then the government's 101 D makes even less sense because if you look at 101 C and 101 D together you can see that these are not only next to each other but they speak in the same durational transactional language and 101 C you have transactions after December 31 2004 what does that mean? Obviously it means transactions entered into after December 31 in 2004 and the government had interpreted the same exact language which appeared in ETI Act to mean transactions entered into after the particular date that they did that in a revenue procedure which is a you know significant document for the IRS revenue procedure 2001-37 section 20.02 of that in section 6.02 of that also in the Chief Counsel memorandum January 12 2007 where they interpreted the prior transitional period under the ETI regime which referred to transactions after a particular date to mean transactions entered into after that date. Once you accept that premise then 101 D makes you know all becomes even more crystal clear that Congress was referring to transactions entered into during 2005-2006 and for those transactions once they were entered into that period they would continue to enjoy the benefit of the transitional rule not the full ETI regime like pre-2005 transactions but the transitional rule and the percentages there. You say that that you know there was more focus on 101 F than there was a 101 D by Congress then repealed that and and you concede that that was there was clearly reflective of an effort to comply with the WTO concerns. Yes. Couldn't you flip the round and say that that well the reason they didn't bother with 101 D is because they didn't think it was that offensive to the WTO concerns. Because they were reading it more narrowly like the government does. That's the argument and the reason why the reason why the focus was on 101 F again because it dealt with future transactions it's if you had a binding and contract in place then future transactions would still receive under that contract would still receive the benefit of the old ETI regime which dealt with competition going forward and that's what the European trading partners are most concerned about. Isn't there some tale of going forward the way you interpret 101 D? Not I mean income received from prior transactions but again if you think about it I mean what what they were worried about is new transactions because that's what where the competition was that's where the jobs were they weren't concerned about the prior effects of old transactions and again that's why they didn't challenge the government's interpretation of 101 C which was an even greater impact when you think about it because under 101 C any transaction transaction entered into before January 1 2005 continued to receive the full benefit of the prior ETI regime and that's one of the oddities under the government's interpretation is that if you accept that interpretation of 101 C then companies were even a worse position under the transitional rule than they were under 101 C and that doesn't make any sense I mean I think another problem with the government's interpretation on 101 C generally is that even to this day the government has a form on its website it's form 8873 for the reporting of ETI income. The government revised that form in September of 2017 and I think that that shows that the IRS practice have been to recognize that with respect to past transactions in particular transactions before 2005 which have been governed by 101 C that for those transactions income received in later years would still get the benefit of the pre the ETI regime and again once you accept that conclusion which I think you have to based on the government's prior interpretations and past practice and the language itself then it follows that Congress must have meant to adopt the same transactional rule for 101 D where it refers to in the case of transactions during 2005 or 2006 everything works together under that interpretation the court doesn't have to get into any of the sort of complicated somersaults that the government would have you do in reading things into the statute reading things out of it failing to take into account of Congress's the absence of any special rule for fiscal taxpayers of the like in 2002 the government is asking this court to read language into the statute in terms of income received from transactions that Congress didn't say it's asking it to disrupt the transaction based regime that had always existed going back to the pre Fisk regime the disk regime they were all transaction based Congress simply carried for that with respect to the ETI repeal and adopted a gradual runway for to adapt and compete compete in the new marketplace where they do wouldn't have the benefits of the ETI regime your interior oh I'm sorry thank you very much Jacob Christensen for the United States may it please the court the government completely agrees that the statute here section 101 of the American Jobs Creation Act dealt in particular paragraph D dealt with transactions and that the transitional rule applied to transactions there's never been a dispute about that in this case what the party's dispute is the scope of the transitional relief that was actually provided so in this case the government agreed that DWA is 2006 film distribution agreement that transaction was entitled to some transitional relief can I just double-check you have not disputed that as to that agreement there's only the one transaction and that later events that like the distribution of a new film creating more licensing revenues do not constitute new transactions that's correct so as to that transaction the IRS agreed and it allowed the DWA to exclude a portion of its income received in 2006 but there's nothing in the statute as mr. Carr points out that refers to taxable income for a taxable year right instead the statute refers to calendar years 2005 and 2006 says transactions in those calendar years right which would be odd because the calendar years and tax years do not always coincide that's that's correct your honor there are two things going on here in the first clause of the statute which is a clause on which taxpayer relies it states in the case of 2006 so even if you interpret the phrase during 2005 or 2006 to modify transactions all that clause accomplishes is to identify which transactions are covered by the transitional rule again the government does not dispute the transactions occurring during 2005 or 2006 are covered by the transitional rule your position is that the statute is after that first clause is is what establishes the scope of the transitional relief actually conferred under the statute that clause is not time-limited well that that clause incorporates paragraph d2 and paragraph d2 explicitly provides an applicable percentage which caps the amount of gross income under under d1 that that shall not exceed that applicable percentage that applicable percentages apply apply specifically for 2005 and for 2006 meaning the 2005 and 2006 calendar years so if you literally transactions entered into in those calendar years not for transaction it doesn't say anything about transactions entered into and completed in those calendar years no no my point your honor is is that the applicable percentage for a specific time period of time which is the calendar year 2005 and the calendar year 2006 and if you read it back to applying to this phrase in d1 during transactions during 2005 and 2006 if you kind of read those two together then that's different right that would be different your honor we do not think that the court should interpret paragraph d2 to involve any shorthand at all it means what it says when Congress said that the applicable percentage was for 2005 and for 2006 it meant those percentages applied for that those time periods so if you plug that into the to the language but why in your view would d2 not be a freestanding provision which I gather that is outside of D which I gather your new position applies even to 2014 transactions excuse me I didn't follow what is your current position about 2014 transactions they would not be entitled to ETI benefits Congress purpose in enacting the apply to transactions after December 31st 2004 in other words transaction pick up pick up pick a November 2004 did I say 2014 I meant yes you did for I'm sorry I'm sorry I'm sorry 2004 transactions those transactions would be entitled to 100% of indefinitely no why until December 31st of 2004 we we read that effective date provision what suppose there's income received in 2005 for the 2004 transaction what's your view with the treatment of that income then under paragraph C the repeal would be effective for that income but under paragraph D there would be limited transitional relief why okay now now I think I'm we're on the same page and now I I hope my question is makes sense why in that event is d2 not a freestanding provision outside of D because you now want to use d2 to apply even to C transactions yes enough in other words it's I mean it seems to me its placement in D tells us it's about the transactions covered by D and not anything else and therefore it's probably talking about the year of the transaction not income well D would apply to any any transaction that is occurring or generating income after the effective date of the repeal for for the 2005 and 2006 energy to simply says that that there to the extent you're talking about 2005 it gets a different benefit and then then 2006 but but you can't take D out d2 out of the D provision it's all self-contained I agree with that and so if you plug in paragraph d2 into the governing statutory language it would say that the amount includable in gross income by reason of the amendments made by this section shall not exceed for 2005 20% and for 2006 40% of the amount which would have been so included section d2 d1 is titled general and it lays out the general rule and then g2 is entitled applicable percentage why wouldn't we reasonably read d2 as as connected to the general principle laid out in d1 I think that is what Congress meant so so D the applicable percentage merely provides the time periods for which gross and trying to say 2000 that indeed to the reference to 2005 means for that for that year only as opposed to for transactions entered into in that year yes and so gross income better reading than to apply d2 to the first phrase which is talking about when it talks about to the only reference in d1 to 2005 and 2006 is in connection with transactions occurring those you want to read the 2005 2006 and d2 to be modifying the latter part of that sentence right am I right about that you want to say it's that applies to the amount includable and gross income for those years right it does your honor because the first clause of the d1 establishes which transactions are covered by the transitional rule but the scope of the transitional relief that's actually provided is defined in the subsequent statutory language and it just to be clear your position is that d2 actually applies to transactions that are outside d1 that are in fact under C so right if there is a multi-year long-term transaction that was enacted before the event and the predecessor then the predecessor regime that from which this language of transaction comes I think you don't dispute tell me if you don't dispute involve transactions that would produce income over multiple years like the leases you know is that defined in 941 or 943 or one of those 940 provisions that that is an another area again the the CCA is that are cited by opposing counsel sorry the chief counsel advice on what she counsel relies came to the conclude came to that conclusion with respect to the earlier ETI regime but I want to be clear that those chief counsel advice do not set out or reflect the government's official position and the IRS never adopted that position and so the same thing with respect to paragraph C you want us to read d2 to say taxable year right but that's what you want to say that it applies to right no your honor it doesn't need to say taxable year it just means the 2005 calendar year that is the time period for which the applicable percentage of 20% applies if you're but if you look at where they refer to taxable year it's clear that that Congress knew how to differentiate and to actually talk about a period of time and that encapsulates income when it wanted to it could have done that the reason Congress did not do that I believe is reflected in the record and and the US trade representative on appendix page 1863 and 1864 explained that the European Union's primary concern with any transition rule was that it be limited to two years and so Congress was accommodating that concern say limited to two years in in terms of what benefits you get it just said limited to two years in terms of the transactions that issue I mean that there was that trade representative statement is not so clear that it couldn't represent it couldn't support either one side in terms of the arguments here no no the concern was that any transition so the primary concern really 101 F where that wouldn't phase out it would allow for all kinds of new transactions to get the benefit yes so I'm talking about during 2004 when the when this was enacted the European Union's primary concern was that any transitional relief be limited to two years and that's reflected in the appendix page 1863 you say we have to the extent possible with our treaty obligations but it is true is it not that Congress has the absolute right to pass statutes that are not consistent with our treaty obligations I agree with that and in in this particular instance would you agree that that to the extent that WTO was concerned and expressed its concern that Congress knew full well when it passed these statutes that it disagree with that and that is the proper inquiry I mean in 2006 there's no question that the WTO ruled that the paragraph D and F violated the United States trade obligations but in 2004 when Congress enacted those provisions the Senate report explains pretty clearly that Congress believed that a two-year phase-out rule was consistent with the United States they said they were trying to move toward what the WTO wanted without being unduly punitive to American corporations I mean it's clear that Congress never thought the WTO was right right but Congress desires reflected in the legislative history was to comply with those rulings and and it compared you know it explained in the legislative history that there it was necessary and appropriate to have some period of transitional relief and Congress believed and if you read the Senate report this is expressed there because the Senate bill that it was proposed at the same time actually clearly phased out transitional benefits within two years by the end of 2006 and the Senate bill explained that Congress believed that that was consistent in bringing the United States as laws into compliance with WTO obligations how do you address the argument that that historically this was always done on a transactions based inquiry so that in other words it had nothing to do with income in a particular taxable year it had to do with with income that arises out of a transaction entered into in a particular and that was the case when one regime after another replaced the former regime and and gave incentives for her exports but when it came to finally repealing the the export regimes which is what Congress did when it finally came to an end and that regime was not replaced it's reasonable for Congress to have provided limited benefits to transactions without granting those transactions you know relief indefinitely for as long as they may continue in other words Congress was phasing out those benefits which is consistent with its overall intent to repeal the provision without replacing it with a new one. So what work does the word transactions actually do in 101d? It describes the purpose of that is to describe to which transactions the transitional rule applies it applies to transactions occurring during 2005 or 2006 but it's the subsequent language of the statute that defines the scope of that relief and that is what the party's about it's not about whether the transitional rule applied to the 2006 film distribution agreement because we agree that it did the question is about the scope of relief provided and in to that issue. Can I ask you just be I mean before you sit down what is the best quote or statement from any of the to income rather than transactions and how a two-year transition was supposed to be a transition as to income not a transition as to time for entry into transactions even those transactions would have possibly long tails of their 2006 minutes in the end of our brief where the EU you happen to have like a actual joint appendix site it's okay don't the European Union representative explained that you know they welcomed the repeal of the grandfather provision and that and then recognize that by the end of the year 2006 but that's not a judicatory decision no it's like a negotiating I'm referring to the person the opposing party in the WTO proceedings the European Union expressed you know stated that welcomed the repeal of the grandfather provision but that's right and then that with the expiration after you know of the transitional rule at the end of 2006 that the parties would finally be the United States would be in compliance and that their long decades old dispute so but when you say you know to your transition it seems to me that language by itself doesn't tell us whether the transition is as to transactions or as to income recognition no what am I trying to focus my question on something that says and what we the these people even if they're old transactions yeah there's two quick answers so the WTO ruled in October well with respect to the prior FSC regime that export illegal export subsidies had to be withdrawn with effect no later than October 1st 2000 and then again the European Union explained that with the expiration of I guess I need to get the exact language I right and that's that's important because the exact language doesn't say at the end of 2006 this will all be over it says that with the expiration of that grace period it will all be over and so their interpretation doesn't necessarily mean that that they thought that at the end of 2006 there would be no more benefits so I found the quote says that the European Union warmly welcomed the repeal by Congress of the grandfather provisions of the American Jobs Act and that when the transition rules of the of that act were to expire at the end of the year compliance would finally be achieved in this very long saga so again we it's paragraph d2 that the government relies on to establish the scope of the relief afforded under the statute which is limited to 2005 and 2006 calendar years a little additional time thank you your honors just a few points I mean number one the government's almost singular reliance on d2 I think is answered by the very first clause of that provision which it neglects to purposes of paragraph one which ties you right back into paragraph one you can't interpret d2 as a freestanding provision as they try to do I mean second with respect to d1 the government's position has become even more strange because as I understand my friend this morning it would say that a transaction entered into before 2005 and so not during 2005 would now benefit from the transitional rule in 2000 in subsection d1 which which makes no sense and that that I think that's a product of its efforts its new interpretation of section 101 C in this case despite 13 years or more of a different interpretation and now it's butchered reading of d1 I mean third judge Toronto you're right with respect to transactions the definition is in 943 b1a Congress clearly understood that transactions would include multi-year agreements which underscores its significance of it so you infer that from the language of leases yes yes and and so that's Congress knew that when referred to transactions in d1 that it was referring to multi-year transactions that could generate income over multiple years there isn't otherwise a definition in the Internal Revenue Code or in something relevant of the term transactions no but I mean obviously Congress is aware of commercial usage and understand the transactions could and really it underscores the anomaly of the government's position which is why would have Congress wanted to treat a a ten million dollar sale in 2005 differently than a ten million dollar lease which was simply paid over the course of ten years it's economically it's the same thing and lastly with respect on the last point though that that your friend on the other side mentioned while WTO's interpretation of our statutes is not binding on us do you agree that that that language from the WTO means they interpreted any benefits to flow to be at an end at the end of 2006 not at all not at all I mean it certainly doesn't say that it refers to transitional rule and it just begs the question of whether that rule was limited to transactions 2005 and 2006 and the ongoing effects or income recognized in later years and nothing in the the WTO proceedings they haven't said anything that suggests that they were concerned about the the effects of transactions that were over they WTO was concerned about new transactions because that's where the competition was and I think the clearest example of that is that the WTO did not object to the government's interpretation of 101 C and I think that's clear just to give you one site page 1853 of the Joint Appendix paragraph 38 it's it's the European Union brief where it makes clear that it doesn't object to giving full benefits to the ETI regime for 2004 and really when you think about it that provision 101 C meant that for transactions before 2005 those transactions would continue to receive the full benefit of the prior ETI regime and the government had interpreted that for more than a decade up to its brief in this case to mean that you could continue to get the benefit ETI benefit for income received in later years that's why it has a forum on its website to this date 8 8 7 3 if the EU had objected to the the benefits of prior transactions it would have objected to 101 C but yet we haven't heard a peep from the EU about 101 C the focus had been on new transactions and that's why the focus was on 101 F we would respectfully urge this court to give effect to the statute that Congress enacted and give full effect to US companies to transitional relief for 2006 thank you both sides and the case is submitted